UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Margie Williams, | Civil Action No.: 4:18-cv-02387-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Perdue Farms, Inc., *a corporation*; and John Doe Contractor, LLC, *a corporation*, | |
| Defendants. | |

Plaintiff Margie Williams brings this premises liability action alleging she slipped and fell in a chicken processing facility owned by Defendant Perdue Farms, Inc. ("Perdue") while working as a poultry inspector for the United States Department of Agriculture ("USDA"). Perdue has filed a motion for summary judgment, which the Court grants for the reasons herein.[1]

## **Background**

In June 2015, Plaintiff was working as a USDA poultry inspector at a Perdue facility located in Dillon, South Carolina.[2] Pl. Dep. [ECF Nos. 14-1 & 15-1] at pp. 9, 12. She was fifty-two years old at the time and had been working in poultry plants since she was eighteen; she had worked for the USDA from 1998 to 2001 and again from 2009 to 2015 at beef and chicken processing facilities in various

---

[1] The Court decides the motion without a hearing pursuant to Local Civil Rule 7.08 (D.S.C.).

[2] In its motion for summary judgment, Perdue explains:

> The USDA's Food Safety and Inspection Service (FSIS) oversees all poultry processing. During the evisceration process, USDA food inspectors like Plaintiff examine the external and internal surfaces of each carcass and also palpate the internal organs. The inspection results in the carcass being either passed or condemned. The USDA can take regulatory action by retaining products, rejecting equipment, or refusing to allow further processing. Perdue has no authority or control over the USDA workers.

ECF No. 14 at pp. 1–2; *see also* 21 U.S.C. § 451 *et seq.* (federal statutes governing poultry production).

states. *Id.* at pp. 7–9, 23, 45, 89; Pl.'s Ans. to Interr. No. 18 [ECF No. 1-1] at pp. 23–24. Plaintiff began working at Perdue's Dillon plant in 2014, and her job duties there were to perform "on-line" and "off-line" inspections in the evisceration department. Pl. Dep. at pp. 9, 26, 43. "On-line" inspections required her to stand on a catwalk at her "duty station" and examine hanging chicken carcasses that passed by on a production line, while "off-line" inspections required her to monitor the work area by walking around and "making sure that the drains w[ere] unclogged, [that] no meat [was] piled up, and [that] the floor was clean." *Id.* at pp. 9–11, 13, 42, 46–47. Perdue's Dillon plant operates in three eight-hour shifts: first shift is for production, second shift for cleanup and sanitation, and third shift for production. *Id.* at pp. 35–37, 40; Lynda Burrell Dep. [14-2 & 15-2] at p. 23. Floors are constantly washed and swept during all three shifts to remove chicken fat and other debris. Pl. Dep. at pp. 40, 69–70; Burrell Dep. at pp. 23–24.

On June 11, 2015, Plaintiff was working third shift and performing "on-line" inspections. Pl. Dep. at pp. 13, 45, 54–55. When her shift ended, she left her duty station, climbed down the stairs from the catwalk, and saw a Perdue employee washing the floor. *Id.* at pp. 54–55, 61, 69. She *walked underneath* a production line and toward an exit door that was located near a production line where a Perdue worker rehangs carcasses. *Id.* at pp. 65–67. Plaintiff started down the exit hall toward the USDA office when her left foot suddenly went backward, and she slipped and fell on the concrete floor. *Id.* at pp. 54–56, 61–62, 115; *see* Exh. 3 to Pl. Dep. [ECF No. 14-1] (picture of exit door and worker hanging chickens). The Perdue employee (the same one who had been washing the floor) helped Plaintiff up and pulled chicken fat from underneath the toe of her left boot. Pl. Dep. at pp. 55, 64–65. Plaintiff alleges that she slipped, tripped, and fell as a result of chunks of chicken fat on the floor, and that she suffered several injuries to her upper and lower extremities, including a torn rotator cuff.

2

Compl. [ECF No. 1-1] at ¶¶ 6–7; Pl. Dep. at pp. 75–76; Pl.'s Ans. to Interr. No. 9.

On June 7, 2018, Plaintiff filed this action in state court naming Perdue and "John Doe Contractor, LLC" as defendants. *See* ECF No. 1-1. On August 28, 2018, Perdue removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332,[3] and it subsequently filed a motion for summary judgment. *See* ECF Nos. 1 & 14. Plaintiff filed a response in opposition, and Perdue filed a reply. *See* ECF Nos. 15 & 16.

## **Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not

---

[3] As recognized in Perdue's notice of removal, the citizenship of Defendant John Doe Contractor, LLC was disregarded for purposes of diversity removal. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *see, e.g.*, *Kueilin Lu Tu v. U-Haul Co.*, 333 F. Supp. 3d 576, 579 n.1 (D.S.C. 2018) (disregarding citizenship of John Doe defendant for purposes of removal).

3

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## Discussion

Perdue argues there is no evidence that it failed to exercise reasonable care. ECF No. 14 at pp. 7–8. The Court agrees.

**I.    Applicable Law**[4]

"To establish negligence in a premises liability action, a plaintiff must prove the following three

---

[4]    South Carolina law applies because this is a diversity action. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "To construe state law, [a court] look[s] to decisions of the state's highest court or, if needed, decisions of the state's intermediate appellate court." *Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 211 (4th Cir. 2019).

4

elements: (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Charleston Elec. Servs., Inc. v. Rahall*, 831 S.E.2d 122, 125 (S.C. Ct. App. 2019). "South Carolina recognizes four classes of persons present on the property of another: adult trespassers, invitees, licensees, and children. The level of care owed is dependent upon the class of the person present." *Lanier Const. Co. v. Bailey & Yobs, Inc.*, 681 S.E.2d 909, 912 (S.C. Ct. App. 2009). Plaintiff alleges she was an invitee on Perdue's premises, *see* Compl. at ¶ 6, and Perdue likewise classifies her as such.[5] *See* ECF No. 14 at p. 7.

"Generally, the owner of property owes an invitee or business visitor[6] the duty of exercising reasonable or ordinary care for his safety and is liable for injuries resulting from the breach of such duty." *Singleton v. Sherer*, 659 S.E.2d 196, 205 (S.C. Ct. App. 2008). "[T]he degree of care required by a landowner is commensurate with the particular circumstances involved, including the age and capacity of the invitee." *Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 540 (S.C. Ct. App. 2000). Landowners are not insurers of their invitees' safety. *Id.* at 539.

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

---

[5] Plaintiff obviously was not a child or trespasser, and regarding whether she was a licensee or an invitee/business visitor, neither the South Carolina Supreme Court nor the South Carolina Court of Appeals appear to have addressed the status of a government inspector working in a private establishment. However, both appellate courts have relied on the "invitee" definitions found in section 332 of the Restatement (Second) of Torts (1965), *see, e.g.*, *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 238 S.E.2d 167, 168 n.2 (S.C. 1977); *Sims v. Giles*, 541 S.E.2d 857, 862, 869 (S.C. Ct. App. 2001), and the South Carolina Court of Appeals has relied on several comments in section 332 of the Restatement (Second) of Torts. *See, e.g.*, *Parks v. Characters Night Club*, 548 S.E.2d 605, 609 n.3 (S.C. Ct. App. 2001); *Sims*, 541 S.E.2d at 862–63, 870; *Hoover v. Broome*, 479 S.E.2d 62, 65 & n.1 (S.C. Ct. App. 1996). One comment provides, "If the business of the possessor of land cannot be lawfully carried on without the presence of an inspector or other official, the official is a business visitor of the possessor." Restatement (Second) of Torts § 332 cmt. h (1965).

[6] A business visitor is a type of invitee and "includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land." *Sims*, 541 S.E.2d at 862.

> . . . .
>
> In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. *Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.*

*Singleton*, 659 S.E.2d at 205 (emphasis added) (quoting Restatement (Second) of Torts § 343A & cmt. e (1965)).

## II. Analysis

Here, Perdue did not breach its duty to provide reasonably safe premises. Plaintiff—a poultry inspector working in the evisceration department of a chicken processing facility—testified she knew chicken parts could be on the floor at times:

> Q: In the evisceration department, do parts of chickens sometimes find themselves on the floor?
>
> A: Yes.
>
> Q: In other words, chicken parts are on the floor of a chicken plant from time to time, aren't they?
>
> A: True. Yes.
>
> Q: All right. Were chicken parts on the floor of a chicken processing plant hidden to you in any way?
>
> A: No.

> Q: Would chicken parts on a floor of a chicken plant be a surprise to you in any way?
>
> A: No.
>
> Q: Did you know that chicken parts could be on the floor of a chicken plant?
>
> A: Yes.

Pl. Dep. at pp. 49–50. Moreover, Plaintiff testified that she had worked in poultry plants "just about all [her] life," that she had worked for the USDA for multiple years, that the USDA requires inspectors to be able to stand and walk on slippery and uneven floors, that she was familiar with the area where she fell, and that she was looking where she was walking. *Id.* at pp. 45, 48, 68, 84. She also testified "somebody is constantly cleaning the floor . . . to keep chicken fat and stuff [off] the floors" at the Perdue plant. *Id.* at pp. 69–70. In fact, Plaintiff saw a Perdue employee washing the floor just before she fell. *Id.* at p. 69. It is clear the presence of chicken fat was known and obvious to Plaintiff. *See Singleton*, 659 S.E.2d at 205.

Viewing the evidence in the light most favorable to Plaintiff, as it must, the Court concludes Perdue did not breach its duty to provide reasonably safe premises and thus is not liable to Plaintiff given the specific factual circumstances of this case. *See Singleton*, 659 S.E.2d at 205 (recognizing that "[i]n the ordinary case," a landowner need not warn an invitee who "knows the actual conditions, and the activities carried on, and the dangers involved in either").

In her response in opposition—which consists of less than half a page of argument and lacks any citations to South Carolina premises liability cases—Plaintiff argues Perdue was negligent in creating a dangerous condition near the area where she fell by failing to have warning signs or notices on doors that were being used for ingress/egress, and where a Perdue worker rehangs carcasses (the "Rehang

Doors"). *See* ECF No. 15 at pp. 3–4. Specifically, Plaintiff asserts her injuries "were proximately caused by slipping on the chicken fat on the floor in a known egress and ingress during a shift change where numerous employees and USDA inspectors are coming in and out of those doors. Doors without any restrictions, notices, and/or warnings from either side." *Id.* By making these arguments, Plaintiff essentially tries to transform this case from a slip-and-fall caused by a *foreign substance* on the floor (i.e., chicken fat) to a slip-and-fall caused by a *dangerous condition created* by Perdue (i.e., allowing ingress/egress through the Rehang Doors that lacked a warning sign or notice).[7] South Carolina premises liability law differentiates between these types of slip-and-falls. *See Baker v. Toys-R-Us, Inc.*, 133 F.3d 913, 1998 WL 7939, at *3–5 (4th Cir. 1998) (explaining how South Carolina law distinguishes cases involving a "foreign substance" from cases involving a "dangerous condition" created by the landowner); *Cook v. Food Lion, Inc.*, 491 S.E.2d 690, 691–92 (S.C. Ct. App. 1997) (same); *Force v. Richland Meml. Hosp.*, 471 S.E.2d 714, 715 (S.C. Ct. App. 1996) (same).

However, Plaintiff's complaint does not allege any dangerous condition created by Perdue as to the Rehang Doors and the lack of warnings regarding ingress/egress through those doors, and even if it did, no warning was required because the presence of chicken fat on the floor was known and obvious to her. *See Singleton*, 659 S.E.2d at 205 ("Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them."); *see, e.g.*, *Meadows v. Heritage Vill. Church & Missionary Fellowship, Inc.*, 409 S.E.2d 349, 351 (S.C. 1991) (holding a

---

[7] Plaintiff argues that while a USDA coworker (Lynda Burrell) testified she was verbally told not to use the Rehang Doors, Burrell could not testify Plaintiff herself was ever notified or told not to use the Rehang Doors, and contends that Burrell was actually using the Rehang Doors to enter the evisceration department on the day Plaintiff fell. *See* ECF No. 15 at p. 2 (citing Burrell Dep. at pp. 9, 15). However, Plaintiff admitted she had to walk *underneath* a production line to even access the area where she fell and which was near the Rehang Doors. Pl. Dep. at pp. 65–67; *see also* Exh. 3 to Pl. Dep. [ECF No. 14-1] (photo of area in question).

landowner did not have a duty to warn an invitee about the danger of wet grass "because it was a natural condition, the peril of which was obvious"); *Orr v. Saylor*, 169 S.E.2d 396, 397 (S.C. 1969) (finding the landowners were not "chargeable with negligence" because "[b]y her own testimony, [the plaintiff] knew that she was in that area of the station where cars were taken to be lubricated, and was aware that she might expect to encounter grease or oil in this area[, and] [h]ence, a warning to this effect by the employee would have been surplusage"); *Bolen v. Strange*, 6 S.E.2d 466, 468 (S.C. 1939) (involving a deliveryman who slipped and fell in a meatpacking facility while standing on a table beneath animal carcasses; and holding that blood on the table was an open and obvious condition); *Richardson v. Piggly Wiggly Cent., Inc.*, 743 S.E.2d 858, 860 (S.C. Ct. App. 2013) (holding the defendant "did not breach its duty to provide reasonably safe premises [because the plaintiff's] testimony conclusively shows she slipped on the ground outside of the store and she knew it was raining and the sidewalk was uncovered"); *Singleton*, 659 S.E.2d at 205 (holding a landowner was not liable to an invitee who was aware of the condition and who "voluntarily exposed himself to any potential danger posed by the" condition); *Larimore*, 531 S.E.2d at 540 (finding a landowner was not liable to "an experienced contractor familiar with construction sites and the way they operated" and who knew of the open and obvious condition); *see also Hackworth v. United States*, 366 F. Supp. 2d 326, 331 (D.S.C. 2005) (applying South Carolina law and granting summary judgment because "given [the plaintiff]'s knowledge of the rainy conditions [and] the close attention [the plaintiff] says she was paying to the floor, . . . the [defendant] had no duty to warn").

The Court will grant Perdue's motion for summary judgment.[8, 9]

---

[8] Perdue also argues there is no evidence that it had constructive knowledge of the substance on the floor. ECF No. 14 at pp. 8–9. The Court need not reach this argument. *See, e.g.*, *Hodges v. Speedway LLC*, 733 F. App'x 729, 731 (4th Cir. 2018) ("[B]ecause [the defendant] did not violate the duty of care, whether [the defendant] had

**Conclusion**

For the foregoing reasons, the Court **GRANTS** Perdue's motion for summary judgment [ECF No. 14] and **DISMISSES** Defendant Perdue Farms, Inc. from this action *with prejudice*. The Court **DISMISSES** Defendant John Doe Contractor, LLC *without prejudice*[10] and **DIRECTS** the Clerk to enter judgment and close this case.

**IT IS SO ORDERED.**

Florence, South Carolina
February 5, 2020

s/ R. Bryan Harwell
R. Bryan Harwell
Chief United States District Judge

---

notice of the condition is not material in this case." (citing *Staples v. Duell*, 494 S.E.2d 639, 642 (S.C. Ct. App. 1997)).

[9]   Even assuming *arguendo* Perdue was negligent, the sole reasonable inference to be drawn from the evidence is that Plaintiff's negligence exceeded fifty percent. *See Bloom v. Ravoira*, 529 S.E.2d 710, 713 (S.C. 2000) (holding a court may grant summary judgment in a comparative negligence case if "the sole reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent"); *id.* at 714 ("Where evidence of the plaintiff's greater negligence is overwhelming, evidence of slight negligence on the part of the defendant is simply not enough for a case to go to the jury."). Moreover, Plaintiff has not presented more than a mere scintilla of evidence regarding Perdue's alleged negligence, and therefore she cannot withstand summary judgment. *See Brewington v. Davis*, No. 4:17-cv-00387-RBH, 2019 WL 532620, at *2 n.5 (D.S.C. Feb. 8, 2019) ("While the 'mere scintilla' standard is the law in South Carolina state court, *see Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 802–03 (S.C. 2009), it is not the standard in federal court. *See Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999) ("A mere 'scintilla of evidence' is not sufficient to withstand a motion for summary judgment. Rather, the evidence must be such that the jury reasonably could find for the nonmoving party.")[.]"). The Court must grant summary judgment for these additional reasons.

[10]   The Court dismisses John Doe Contractor, LLC without prejudice because discovery ended in December and Plaintiff never sought leave to amend her complaint to substitute a named defendant in place of this John Doe defendant. *See Attkisson v. Holder*, 925 F.3d 606, 625–28 (4th Cir. 2019) (recognizing a court may sua sponte dismiss a John Doe defendant without prejudice "if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court" (citing *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982))); *Massey v. Ojaniit*, 759 F.3d 343, 347 n.1 (4th Cir. 2014) (same).